**ORIGINAL**

**RECEIVED**

JUL - 3 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## United States District Court
### FOR THE DISTRICT OF COLUMBIA

Scott A. Whittington,                )
P.O. Box 2147,                       )      Case No: 1:07-CV-02135 (RJL)
360-225-1848                         )
                                     )      RESPONSE TO MOTION TO
                    Plaintiff,       )      DISMISS AMENDED COMPLAINT
        v.                           )
                                     )
UNITED STATES OF AMERICA,            )
                                     )
                    Defendant.       )

### INTRODUCTION

After Plaintiff filed the original complaint in the above-numbered action,

defendant moved to dismiss on grounds of lack of subject matter jurisdiction,

presumably knowing full well that lack of subject matter jurisdiction had been defeated

as grounds for dismissing the instant type of action  early as March, 2006.  When

Plaintiff pointed this out in responding to the Motion to Dismiss, defendant insisted the

Court should not reverse its ruling in a prior case (made when the Court was arguably

unaware of the defeat of subject matter jurisdiction as a basis for dismissal), and,

alternatively, for failure to state a claim based in part upon the same issue as in the

original Motion to Dismiss (failure to allege exhaustion) and for lack of factual support.

The Court allowed Plaintiff to Amend, and defendant, now dissatisfied with

Plaintiff's Statement of Facts, moves to dismiss the Amended Complaint on that same ground, and on lack of jurisdiction of "non-collection" counts, as well as asserting that a recent Supreme Court decision (upholding a *sua sponte* consideration of the Court of Appeals for the Federal Circuit, See 457 F. 3d 1345, in respect of the timeliness of a lawsuit filed in the Court of Federal Claims[1]) requires this Court to reconsider repeated decisions regarding subject matter jurisdiction, and rely upon "Pre-1998 cases" to dismiss for lack of jurisdiction. Plaintiff hereby responds.

## QUESTION PRESENTED

Does defendant, by and with the active assistance of counsel, once again misrepresent the status of the Court's subject matter jurisdiction?

## SUPPLEMENTAL QUESTION PRESENTED

Does defendant, with the active assistance of counsel, misrepresent the effect, if any, of *John R. Sand & Gravel Co. v. United States*, 552 U. S. _____ (2008), on the instant action?

## DISCUSSION

As discussed in defendant's Motion, the Court's *subject matter* jurisdiction was confirmed by this Court, in *Turner v. United States*, 429 F.Supp.2d 149 (D.D.C. 2006), on the basis of *Arbaugh v. Y & H Corp.*, 126 S.Ct. 1235 (2006). In *Arbaugh*, decided February 22, 2006, the Supreme Court examined "essential element of a claim" in

---

[1]An issue waived by the United States, but called to the Appeals Court's attention by an amicus brief

respect of factual matters. *Arbaugh*, at 1240. Citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U. S. 133, the *Arbaugh* Court reiterated:

> If satisfaction of an essential element of a claim is at issue, however, the jury is the proper trier of contested facts.

In *Turner,* followed by *Lindsey v. United States*, 448 F.Supp.2d 37 (D.D.C. 2006), and other cases (*Ross v United States*, 448 F.Supp. 2nd, 139 (D.D.C. 2006); *Davis v United States*, ___ F.Supp. 2nd ___ (D.D.C. 2006)), this Court has repeatedly determined that *Arbaugh* "confirm[ed] the correctness of the rule articulated in Avocados Plus...distinguish[ing] prerequisites that are genuinely jurisdictional from those which are not jurisdictional barriers but constitute merely an "ingredient of . . . [the] claim for relief" *Ross*, p 18, and that "exhaustion of administrative remedies" is a factual issue[2].

In *John R. Sand & Gravel Co. v. United States*, 552 U. S. ____ (2008), the Supreme Court upheld a *sua sponte* consideration of the Court of Appeals for the Federal Circuit, See 457 F. 3d 1345, in respect of the timeliness of a lawsuit filed in the Court of Federal Claims (under the Act creating the CFC)[3]. The Honorable Breyer, J., for the 7 Member majority, wrote:

> We hold that the special statute of limitations governing the Court of Federal Claims requires that *sua sponte* consideration.

---

[2] How this factual issue should be dealt with is discussed below, in SINGLE BASIS FOR BOTH "GROUNDS".

[3] An issue waived by the United States, but called to the Appeals Court's attention by an *amicus* brief.

That was the entire extent of the *John R. Sand & Gravel* holding. In *dicta*, the

Honorable Breyer, J., makes mention of *Arbaugh v. Y & H Corp.*, 546 U. S. 500, 514

(2006), but solely in respect of

> the time limits of these statutes...whether certain equitable considerations
> warrant extending a limitations period. See, e.g., ibid.; see also *Arbaugh*
> *v. Y & H Corp.*, 546 U. S. 500, 514 (2006). (emphasis added)

Timeliness is not raised in the instant Motion to Dismiss, and John R. Sand is of

no effect upon "...that readily administrable bright line..." regarding "an element of a

plaintiff's claim for relief, not a jurisdictional issue." The equitable consideration at issue

in *Arbaugh* was the Civil Rights Act of 1964, Title VII's "fifteen or more employees,"

definition of "employer", and whether that statutory definition deprived the District Court

of subject matter jurisdiction of the case, or was merely "a particular fact". The

difference between *Arbaugh* and *John R. Sand & Gravel* is as "...that readily

administrable bright line..." observed by the Honorable Ginsburg, J., in the former case.

The District Court in Arbaugh's case dismissed after trial on the merits for lack of

jurisdiction on a post-judgment 12(h)(3) motion of Y&H asserting for the first time that it

had fewer than 15 employees on its payroll and therefore was not amenable to suit

under Title VII. The Fifth Circuit upheld that post-judgment dismissal, and the *Arbaugh*

Court reversed on the basis that:

> [I]f subject-matter jurisdiction turns on contested facts, the trial judge may
> be authorized to review the evidence and resolve the dispute on her own.
> If satisfaction of an essential element of a claim is at issue, however, the
> jury is the proper trier of contested facts. *Reeves v. Sanderson Plumbing*
> *Products, Inc.*, 530 U. S. 133.

*John R. Sand & Gravel*, on the other hand, has no factual element at issue. The

sole issue considered *sua sponte* by the Court of Appeals for the Federal Circuit was whether the Appellant, *John R. Sand & Gravel*, brought the CFC action too late (after expiration of "the special statute of limitations"), and review by the Supreme Court was limited to whether the Court of Appeals could consider that "untimeliness" when the United States had failed to raise it in Reply. The Supreme Court upheld the Court of Appeals on that singular issue: "the special statute of limitations governing the Court of Federal Claims required the Court of Appeals' *sua sponte* consideration" that, by failing to raise the six-year time limitation on Appeal, the United States did not and could not waive the jurisdictional time limitation.

Remarkably, defendant infers that *John R. Sand & Gravel Co. v. United States*, "overruled" *Arbaugh*, citing *Kay v. Sec'y of HHS*, another Court of Federal Claims case, 80 Fed.Cl. 601, without explaining how a CFC case, citing a holding in respect of the timeliness of a lawsuit filed in the CFC, has any bearing whatsoever upon the instant action in the District Court, which has exclusive jurisdiction over such cases. This inference is made even more remarkable in light of the CFC's own acknowledgment that Congress has

> "...given the district courts exclusive jurisdiction over these specific matters, see 26 U.S.C. § 7433(a); 18 U.S.C. § 1964(a)..."

*Tempelman v. United States*, No. 06-414T (Fed. Cl. Jan. 9, 2007) (Wolski, J.).

TURNING BACK TIME

Defendant's citations to pre-*Arbaugh* decisions of other circuits (in which *Avocados Plus* is persuasive rather than precendential), regardless of their number,

are, and should be, unavailing. In the midst of citing recent "consistent decisions",
defendant asks this Court to ignore recent Supreme Court precedent, and decide upon
what the interpretation of the law was, rather than what it is.

Most remarkably (to date), defendant actually suggests that the Court now place
its reliance upon "61 decisions issued by 36 different courts" noting, at n.4 "A citation to
these opinions is attached as Exhibit A", and overrule itself (and the Supreme Court) to
change its mind and re-decide the jurisdictional question based upon "Pre-1998
Cases". SEE: Exhibit A to Motion to Dismiss.

It appears that defendant's reasoning is that the District Court (or any State
Courts, for that matter) can and should ignore inconvenient Supreme Court precedent
to reach the result that defendant seeks, no matter what. By this reasoning, defendant,
and the State of Louisiana (and other States) can rely upon pre-June, 2008 Supreme
Court precedent, to impose a death penalty upon a retarded man for a non-fatal rape of
a child, See: *Kennedy v. Louisiana*, 554 U. S.____ (June 25, 2008); defendant, and the
State of Arizona (and other States) can rely upon pre-1966 Supreme Court precedent,
to coerce confessions (*Miranda v. Arizona*, 384 U.S. 436 (1966)); defendant, and the
State of Florida can rely upon pre-1963 Supreme Court precedent, to try the coerced
confessor without counsel (*Gideon v. Wainwright*, 372 U.S. 335 (1963)); the State of
Ohio (and other States) could rely upon pre-1961 Supreme Court precedent to use
evidence obtained through warrantless searches, to convict that coerced confessor

without counsel (*Mapp v. Ohio*, 367 U.S. 643 (1961))[4]. Indeed, by defendant's reasoning, governments can rely upon an older interpretation of the law to uphold the legal ownership of one human by another (*Scott. v. Sandford*, 60 U.S. 393 (1856))[5].

Even if the Court were to decide to revisit its own considered decisions (and *Arbaugh*, based somehow upon *John R. Sand*), the issue of subject-matter jurisdiction would still be undecided. As noted above, and in *Arbaugh*, itself, that case came to the Supreme Court on the Fifth Circuit's affirmance of a District Court dismissal after Arbaugh prevailed in a jury trial on the merits. Thus, even if this Court held itself as responsible for determining whether Plaintiff had "exhausted administrative remedies available", that determination of the "essential element" would still be triable by a jury, "the proper trier of contested facts. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U. S. 133". *Arbaugh*. Only then, finding failure to exhaust after trial on the merits, would the Court be justified in dismissing for lack of subject matter jurisdiction; the same situation the Supreme Court faced in *Arbaugh*. "Failure to exhaust of administrative remedies" is an affirmative defense, not a basis for a pre-trial dismissal.

SINGLE BASIS FOR BOTH "GROUNDS"

The sole pillar upon which both legs of the Motion to Dismiss Amended

---

[4]In this instance, defendant would have to rely upon pre-1914 law (*Weeks v. United States*, 232 U.S. 383 (1914))

[5]While defendant will no doubt vehemently oppose this analysis as outrageous, the recent 5-4 decision in *Boumediene V. Bush*, 553 U. S. ____ (June 12, 2008) (Roberts, C.J., Scalia, Thomas, and Alito, JJ., dissenting) clearly establishes that rights long-secured, such as *habeas corpus*, can be attacked whenever "powers that be" decide, and are guaranteed only by "eternal vigilance".

Complaint rest - both "lack of jurisdiction" and "failure to state a claim" - is that Plaintiff

"...failed to *demonstrate* that he filed an administrative claim...". The government's

attorney knows, or should know, more than a year after the fact, that the law places no

such burden on Plaintiff.

The United States Supreme Court decision in *Jones v Bock,* 549 U. S. _____

(2007), established that:

> "The fact that the [statute at issue]...is silent on the issue whether exhaustion
> must be pleaded or is an affirmative defense, is strong evidence that the usual
> practice should be followed, and the practice under the Federal Rules is to
> regard exhaustion as an affirmative defense..."

The Honorable Roberts, C.J., also reiterated:

> "Failure to exhaust is better viewed as an affirmative defense. Federal Rule of
> Civil Procedure 8(a) requires simply a 'short and plain statement of the claim' in a
> complaint..."

and that,

> "Courts should generally not depart from the Federal Rules' usual practice based
> on perceived policy concerns. See, e.g., Leatherman v. Tarrant County Narcotics
> Intelligence and Coordination Unit, 507 U. S. 163,"[6]
> *****
> "Given that the [statute at issue] does not itself require plaintiffs to plead
> exhaustion, such a result 'must be obtained by amending the Federal Rules, and
> not by judicial interpretation.' Leatherman, supra, at 168. Pp. 10-16."

The sole basis of "failure to demonstrate" supports neither "lack of jurisdiction"

nor "failure to state a claim" as grounds for dismissal.

Plaintiff asserts that the Amended Complaint, which includes a Statement of

_____

[6] Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S.
163 Held: A federal court may not apply a "heightened pleading standard" -- more
stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)

Facts, met the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), as

interpreted in *Conley v. Gibson*, 355 U.S. 41[7], reiterated in *Jones v. Bock* (Nos.

05-7058 and 05-7142) __ U.S. _____ (January, 2007),  and modified, after 50 years, in

*Bell Atlantic v Twombly*, 550 U. S. ____ (2007).  To the extent that defendant believes

the Statement of Facts to be insufficient, Plaintiff asserts that he, as a *pro se* litigant,

*Haines v. Kerner*, 404 U.S. 519, should be allowed an opportunity to cure that

insufficiency (in the event that the Court agrees); an opportunity similar to the

"opportunity for discovery of facts" afforded in *Ignatiev v. United States*, 238 F.3d 464,

467 (D.C. Cir. 2001)[8]  referenced in *Shane v United States*, 1:07-cv-00577-RBW

(January, 2008).

    Lastly upon the subject, defendant could not seriously assert prejudice by the

jury's trial of the factual element, since the jury could, upon examination of all relevant

facts, find that *available remedies* were not, in fact, exhausted; a Fed.R.Civ.P 12(h)(3)

---

[7] "(b) Failure of the complaint to set forth specific facts to support its general allegations
of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit,
since the Federal Rules of Civil Procedure do not require a claimant to set out in detail
the facts upon which he bases his claim." Pp. 47-48.

[8] Quoted in Shane:  "Broadly speaking, there are two types of Rule 12(b)(1) motions. "A
            facial challenge attacks 'the factual allegations of the complaint'
            that are contained on 'the face of the complaint,' while a factual
            challenge is addressed to the underlying facts contained in the
            complaint." Al-Owhali, 279 F. Supp. 2d at 20 (quoting Loughlin v.
            United States, 230 F. Supp. 26, 35-36 (D.D.C. 2002) (citations
            omitted))...For this latter type of challenge, plaintiffs must "be given
            an opportunity for discovery of facts necessary to establish
            jurisdiction." Ignatiev v. United States, 238 F.3d 464, 467 (D.C. Cir.
            2001) (citations omitted)."

motion re lack of jurisdiction worked for Y & H Corp., in *Arbaugh* (until the Supreme

Court's decision, and Fed.R.Civ.P 12(h)(2) allows a Motion to Dismiss for "failure to

state a claim" any time prior to judgment, to wit:

> "A defense of failure to state a claim upon which relief can be granted...may be
> made in any pleading permitted or ordered under Rule 7(a)[9], or by motion for
> judgment on the pleadings, <u>or at the trial on the merits</u>." Fed.R.Civ.P 12(h)(2)
> (emphasis added)

DEFENDANT FAILED TO MAKE SUBSTANTIVE "ADMINISTRATIVE REMEDIES

AVAILABLE

## QUESTION PRESENTED

Does defendant, with the active assistance of counsel, misrepresent the nature

and applicability of the regulation cited as a substantive rule--or a "legislative-type rule,"

i.e., one "affecting individual rights and obligations"?

## DISCUSSION

Defendant relies heavily upon 26 U.S.C. § 7433(d)(1) as prohibiting an award of

judgment (and thus divesting the Court of jurisdiction) "unless the court

determines...exhaustion of administrative remedies available". Id. The flaw in

defendant's argument is that Office of the Federal Register documents (Appendix 1)

establish that neither the Secretary of the Treasury nor any authorized delegate

---

[9]"Pleadings permitted" are limited to "complaint and an answer; a reply to a
counterclaim denominated as such; an answer to a cross-claim, if the answer contains
a cross-claim; a third-party complaint, if a person who was not an original party is
summoned under the provisions of Rule 14; and a third-party answer, if a third-party
complaint is served. <u>No other pleading shall be allowed</u>, except that the court may order
a reply to an answer or a third-party answer." (Emphasis added)

promulgated any *substantive regulation* (see footnote 3, below), i.e., a regulation

containing the "certain substantive characteristics" and "certain procedural requisites"

required Chrysler v. Brown, 441 U.S. 281, at 301; procedural requisites "affecting

individual rights and obligations" Morton v. Ruiz, 415 U.S. 199, at 232, found in "a

substantive rule--or a 'legislative-type rule,'" 441 U.S., at 302; 415 U.S., at 236, which

made "administrative remedies available" (IRC § 7433) under any incarnation of

Internal Revenue Code section 7433.  As the Honorable Rehnquist, J., stated in

Chrysler v. Brown, 441 U.S. at 301, 302,

> "In order for a regulation to have the "force and effect of law," it must have
> certain substantive characteristics and be the product of certain
> procedural requisites. The central distinction among agency regulations ...
> is that between "substantive rules" on the one hand and "interpretative
> rules, general statements of policy, or rules of agency organization,
> procedure, or practice" on the other. *** But in Morton v. Ruiz, 415 U.S.
> 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), we **1718 noted a
> characteristic inherent in the concept of a "substantive rule." We
> described a substantive rule--or a "legislative-type rule," id., at 236, 94
> S.Ct., at 1074-as one "affecting individual rights and obligations." Id., at
> 232, 94 S.Ct., at 1073. This characteristic is an important touchstone for
> distinguishing those rules that maybe "binding" or have the "force of law."
> Id., at 235, 236,94 S.Ct., at 1074."[10]

The "certain procedural requisites" to which the Chrysler Court referred include,

in the instance before the Court, the procedural requirements of TREASURY

DIRECTIVE: 28-01, and TREASURY DIRECTIVE 25-03, discussed below.

---

[10]Within Chrysler's analysis, footnote 31 included the commentary:
> "In contrast [the Attorney General's Manual] suggests that "interpretive
> rules" and "general statements of policy" do not have the force and effect
> of law. Interpretive rules are issued by an agency to advise the public of
> the agency's construction of the statutes and rules which it administers."
> Ibid. General statements of policy are "statements issued by an agency to
> advise the public prospectively of the manner in which the agency
> proposes to exercise a discretionary power."

The Chrysler Court continued, at 303:

> "Likewise, the promulgation of these regulations must conform with any procedural requirements imposed by Congress. Morton v. Ruiz, supra, at 232. For *agency discretion is limited not only by substantive, statutory grants of authority, but also by the procedural requirements which "assure fairness and mature consideration of rules of general application*." NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764 (1969)." (Emphasis added)

## REGULATION OWN BEST EVIDENCE AS INTERPRETATIVE

The sole statute identified as a source of authority in each rendition of "26 C.F.R. § 301.7433-1" is "26 U.S.C. 7805". A long list of cases and authorities both preceding and succeeding the promulgation of "26 CFR 301.7433-1" establishes that regulations promulgated under authority of IRC § 7805, absent other specific authority, are interpretative. See: *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 253, 101 S.Ct. 2288, 2292 (1981): "[T]he Commissioner interpreted Congress' definition only under his general authority to 'prescribe all needful rules.' 26 U.S.C. §7805(a). Because we therefore can measure the Commissioner's interpretation against a specific provision in the Code, we owe the interpretation less deference than a regulation issued under a specific grant of authority..."; *Estate of Applebaum v. CIR*, 724 F.2d 375, 381 n. 5 (3rd Cir. 1983): (7805 regs are interpretive); *CWT Farms, Inc. v. Commissioner*, 755 F. 2d 790, 800 (11th Cir. 1985): (7805 regulations are interpretive); *Dresser Industries, Inc. v. C.I.R.*, 911 F.2d 1128. 1138 (5th Cir. 1990) (7805 regulations are interpretive); *Armstrong World Industries, Inc. v. Commissioner*, 974 F.2d 422, 430 (3rd Cir. 1992): (legislative regulations are derived from express statutory command other

than general power to adopt regulations)[11]; *Nalle v. C.I.R.*, 997 F.2d 1134, 1138 (5th

Cir. 1993) (7805 regulations are interpretive);  *Lomont v. O'Neill*, 285 F.3d 9, 16 (D.C.

Cir. 2002) examines the issue in greater detail:

> "One of the provisions - § 7805 - gives the Secretary authority "to prescribe all
> needful rules and regulations for the enforcement of this title." 26 U.S.C. §
> 7805(a). This is nothing more than a general grant of interpretative rulemaking
> power, and therefore cannot support the certification regulations. See Stanley S.
> Surrey, The Scope and Effect of Treasury Regulations under Income, Estate and
> Gift Taxes, 88 U. Pa. L. Rev. 556, 557-58 (1940) (concluding that regulations
> issued under Treasury's general rulemaking grant are merely interpretative and
> "do not possess the vital current of legislative power"); Ellsworth C. Alvord,
> Treasury Regulations and the Wilshire Oil Case, 40 Colum. L. Rev. 252, 257
> (1940) (stating that specific rulemaking grants given to the Commissioner of
> Internal Revenue authorize legislative rulemaking but that the general rulemaking
> grant authorizes only interpretative rules to assist in the execution of the statute);
> Michael Asimow, Public Participation in the Adoption of Temporary Tax
> Regulations, 44 Tax Law. 343, 357 (1991) ("[T]ax authorities almost uniformly
> assume that regulations adopted pursuant to the Treasury's general rulemaking
> power in section 7805(a) of the Code are interpretive and that rules adopted
> pursuant to specific grants of rulemaking authority are legislative.").

REGULATION OWN BEST EVIDENCE OF FAILURE TO COMPLY WITH TREASURY

DIRECTIVES AND  APA

TREASURY DIRECTIVE: 28-01 (Appendix 2, Part 1), by express terms,

"establishes procedures that govern the issuance of regulations" Ibid., ¶ 1, and

mandates that "issuance of regulations, the review of existing regulations, and the

publication of regulatory agendas and programs are governed by the Administrative

Procedure Act," among other Acts,  Ibid., ¶ 2.  TREASURY DIRECTIVE: 28-01

---

[11] "Moreover, legislative regulations not promulgated under the general authority to
'prescribe all needful rules and regulations,' 26 U.S.C. §7805(a), but instead emanating
from a specific grant of Congressional authority 'to define a statutory term or prescribe a
method of executing a statutory provision,' [cite omitted] are owed an even greater
deference.

establishes "Special Procedures for the Internal Revenue Service", at Part I, ¶ 4(b).

TREASURY DIRECTIVE 25-03 (Appendix 2, Part 2) "states the responsibilities and procedures for submitting Department of the Treasury documents to the Office of the Federal Register in accordance with Title 1 of the Code of Federal Regulations (CFR) Chapter 1." Ibid. ¶ 1, and establishes conclusively that regulations submitted to the Office of the Federal Register for publication must comply with Title 1 of the Code of Federal Regulations. TREASURY DIRECTIVE 25-03 also reaffirms that every document submitted must comply with TREASURY DIRECTIVE 28-01. TREASURY DIRECTIVE 25-03, ¶ 4(a)(2).    "[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]"[12] failed to comply with the procedural requirements of TREASURY DIRECTIVE 28-01 and TREASURY DIRECTIVE 25-03, to wit:

Each of the Treasury Decisions identified lacks the "complete citation of the authority under which the section is issued" required by Title 1 C.F.R. § 21.40 (Appendix 1, Part 1), "including-(a) General or specific authority delegated by statute; and (b) Executive delegations, if any, necessary to link the statutory authority to the issuing agency". The information required by Title 1 C.F.R. § 21.40 is among the Agency Responsibilities published in Title 1 C.F.R. § 21.41 Appendix 1, Part 2).

The published "26 CFR 301.7433-1" contains neither a citation to 102 Stat. 3747 (TBOR I), nor to 110 Stat. 1465 (TBOR II), nor to 112 Stat. 730 (TBOR III), aka IRC §

_____

[12]This series of Treasury Decisions purporting to "promulgate" and "amend" 26 CFR 301.7433 is quoted directly from, Treasury Decision 9050, 68 FR 14320 including the brackets.

7433, in its three (3) incarnations, as the source of authority, as required by the Office

of the Federal Register in its administration of the Federal Register Act, at Title 1 C.F.R.

§ 21.43(a) Appendix 1, Part 3), and Title 1 C.F.R. §  CFR 21.52 (Appendix 1, Part 4);

nor does it contain a citation to any substantive authority, as exemplified in Title 1

C.F.R. §  CFR 21.45 (Appendix 1, Part 5), and Title 1 C.F.R. §  CFR 21.53 (Appendix 1,

Part 6).

"26 CFR 301.7433-1", in every instance, failed to comply with the procedural

requirements established in TREASURY DIRECTIVE 25-03[13].

"26 C.F.R. § 301.7433-1" IS ITS OWN BEST EVIDENCE OF FAILURE TO COMPLY

WITH APA

In discussing the distinction between "substantive" and "interpretative

(interpretive)" regulations, the Chrysler Court pointed out, at 441 U.S. 315, that the

regulation at issue therein established, *inter alia*:

> " 'As the changes made by this document relate solely to interpretive
> rules, general statements of policy, and to rules of agency procedure and
> practice, neither notice of proposed rule making nor public participation
> therein is required by 5 U.S.C. 553. Since the changes made by this
> document either relieve restrictions or are interpretative rules, no delay in
> effective date is required by 5 [441 U.S. 315] U.S.C. 553(d). These rules
> shall therefore be effective immediately.' "

Chrysler found, "Thus, the regulations were essentially treated as interpretative

rules, and interested parties were not afforded the notice of proposed rulemaking

required for substantive rules under 5 U.S.C. § 553(b)."

_____TREASURY DIRECTIVE 28-01 establishes that Treasury Decisions 8392 (57 FR

---

[13]Failure to comply with Treasury Directive 28-01 is discussed in greater detail below.

3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992), and 9050 (68 FR 14320, Mar. 25,

2003" *aka* "26 CFR 301.7433-1" had to meet the procedural requirements of the

Administrative Procedure Act, as well as those of Title 1, Code of Federal Regulations.

TREASURY DIRECTIVE 28-01 applies, by express terms, to:

> (1) any advance notice of proposed rulemaking, notice of proposed rulemaking (proposed regulation), temporary (interim) regulation, final regulation or Treasury Decision published in the Federal Register;
> (2) any other publicly-issued document of general applicability and future effect designed to implement, interpret, or prescribe law or policy, or describing the procedure or practice requirements of an office or bureau;
> (3) any document that withdraws or substantively amends a previously issued regulation;
> (4) any document published in the Notice section of the Federal Register that:
>> (a) requires or authorizes any action on the part of any person to participate in a program, avoid a penalty, or obtain a benefit;
>> (b) contains a reporting or recordkeeping requirement;

Defendant forcefully asserts that "26 CFR 301.7433-1" was "designed to

implement, interpret, or prescribe law or policy," and "requires...any action on the part of

any person...to participate in a program, avoid a penalty, or obtain a benefit" as

described in TREASURY DIRECTIVE 28-01. Defendant's forceful assertion establishes

that the Treasury Directive is applicable to the regulation cited.

The regulation (sic) is its own best evidence 1) of its inherent nature as an

interpretative regulation; and 2) of failure to comply with the Administrative Procedure

Act, as mandated by TREASURY DIRECTIVE 28-01.

The regulation (sic) is its own best evidence 1) of its inherent nature as an

interpretative regulation; and 2) of failure to comply with the Administrative Procedure

Act, as mandated by TREASURY DIRECTIVE 28-01. The published "26 CFR

301.7433-1" contains the statement, in part, that:

> "It also has been determined that section 553(b) of the Administrative
> Procedure Act (5 U.S.C. chapter 5) does not apply to these
> regulations..."[14]

_____TREASURY DIRECTIVE 28-01, unarguably applicable, allows exemption from 5

U.S.C. § 553 only in cases of emergency or statutory or judicial deadlines, and requires

that any regulation asserting such "shall contain a specific statement explaining, and a

citation to the provisions of 5 U.S.C. 553 that authorize, such action." TREASURY

DIRECTIVE 28-01, Part VI, ¶¶ 1, 2. "26 CFR 301.7433-1" failed to comply with these

procedural requirements of TREASURY DIRECTIVE 28-01.

_____In the similar situation, the Supreme Court followed the precedent it had set 2

years previously:

> "As we observed in Batterton v. Francis, 432 U.S. 416, 425 n. 9, 97 S.Ct.
> 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977):
> > "[A] court is not required to give effect to an interpretative
> > regulation. Varying degrees of deference are accorded to
> > administrative interpretations, based on such factors as the timing
> > and consistency of the agency's position, and the nature of its

---

[14]     Section 4 of the Administrative Procedure Act, at 5 U.S.C. § 553(b), provides for
ONLY two exceptions to the requirement that "General notice of proposed rule making
shall be published in the Federal Register":
    "*****
    "Except when notice or hearing is required by statute, this subsection

does

    not apply --
    "     (A) to *interpretative rules, general statements of policy,* or *rules of
    agency organization, procedure, or practice*; or
    "     (B) when the agency for good cause finds (and incorporates the
    finding and a brief statement of reasons therefor in the rules issued)
    that notice and public procedure thereon are impracticable,
    unnecessary, or contrary to the public interest."

expertise." [15]

"We need not decide whether these regulations are properly characterized as "interpretative rules." It is enough that such regulations are not properly promulgated as substantive rules, and therefore not the product of procedures which Congress prescribed as necessary prerequisites to giving a regulation the binding effect of law."

Chrysler, at 441 U.S. 315.

In the clear absence 1) of an incorporated "finding and a brief statement of reasons therefor" as specified in 5 USC § 553(b)(3)(B); and in the clear absence 2) of "a specific statement explaining, and a citation to the provisions of 5 U.S.C. 553 that authorize, such action" as required by TREASURY DIRECTIVE 28-01, Part VI, ¶¶ 1, 2; the Treasury Decisions' assertion that "section 553(b) of the Administrative Procedure Act...does not apply...",  those Treasury Decisions purporting to promulgate "26 CFR 301.7433-1"  are their own best evidence that it is, and was ever intended to be, merely "an interpretative regulation" Rowan Companies, Inc., 452 U.S. 247, 253, Chrysler, 441 U.S. 281 at 315; Batterton v. Francis, 432 U.S. 416, 425 n. 9, not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at 232, that "[A] court is not required to give effect to" Batterton v. Francis, *supra*.

Based upon the standards adjudicated in *Rowan Companies, Inc. v. United States, supra* Chrysler v. Brown, *supra*, Morton v. Ruiz, *supra*, and established by the Office of the Federal Register publishing the Code of Federal Regulations[16] in its administration of the Federal Register Act, as those standards have been recognized by

---

[15]The Court is respectfully reminded that defendant's agency failed to even attempt to promulgate a regulation for four years after the right to bring an action was granted by Congress.

[16]("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR 8.1).

the Treasury Department in TREASURY DIRECTIVE 28-01 and TREASURY
DIRECTIVE 25-03, "26 CFR 301.7433-1" is nothing more than an "interpretative
regulation" not "affecting individual rights and obligations".

## SUPPLEMENTAL QUESTION

## DID DEFENDANT'S AGENCY WILLFULLY ACT TO THWART CONGRESS' INTENT
## AND THE JUDICIAL POWER OF THE COURTS?

It is abundantly clear that defendant's agency was aware that regulations
promulgated solely under the authority of "general rulemaking power" of IRC § 7805
were merely "interpretive". The cases on the issue spanned from 11 years before the
first regulation was finalized (Rowan) to 10 years after (Lomont); and the authorities
spanned more than 5 decades, to 1 year before "T.D. 8392" became final in February,
1992 (57 FR 5931); "T.D. 9050"'s amendment (re: TBOR 3) became final in March,
2003 (68 FR 14320). It is equally clear that defendant's agency was aware of
TREASURY DIRECTIVE 28-01, issued by its parent 2.5 years before "T.D. 8392"
(1992) became final. Yet defendant, through its agency, chose to promulgate an
interpretive (interpretative) regulation.

Since the promulgation of "T.D. 8392" (1992), defendant, its agents, and its
attorneys have apparently misrepresented this interpretative regulation asa
"legislative-type rule," i.e., "having force and effect of law", and "affecting individual
rights and obligations", even after Lomont, in the D.C. Court of Appeals (2002)[17],

---

[17] While the Court will be understandably reluctant to believe that defendant, its agents,
and its attorneys have, in essence, perpetrated a fraud upon the Court in this regard for
nearly 2 decades, Plaintiff includes, as Appendix 3, the entire 137 page T.C. Memo.

reaffirmed, for cases within the D.C. Circuit, the interpretive status of regulations

promulgated solely under the authority of "general rulemaking power". As recently

acknowledged by the United States Tax Court in Hartman, *et al.*, v. Commissioner, T.C.

Memo 2008-124, at p. 82:

> " 'Wisdom too often never comes, and so one ought not to reject it merely
> because it comes late." Henslee v. Union Planters Natl. Bank & Trust Co.,
> 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting)",

defendant should held to account for its misrepresentations.

Based upon the foregoing, the Court should follow the Supreme Court's prudent

example, and find that "26 CFR 301.7433-1", promulgated, by its own express terms,

under the general authority of § 7805, is nothing more than interpretative, *Rowan*

*Companies, Inc. v. United States*, 452 U.S. 247, 253,(1981), *Estate of Applebaum v.*

*CIR*, 724 F.2d 375, 381 n. 5 (3rd Cir. 1983), *CWT Farms, Inc. v. Commissioner*, 755 F.

2d 790, 800 (11th Cir. 1985), *Dresser Industries, Inc. v. C.I.R.*, 911 F.2d 1128. 1138

(5th Cir. 1990), *Armstrong World Industries, Inc. v. Commissioner*, 974 F.2d 422, 430

(3rd Cir. 1992), *Nalle v. C.I.R.*, 997 F.2d 1134, 1138 (5th Cir. 1993), *Lomont v. O'Neill*,

285 F.3d 9, 16 (D.C. Cir. 2002), Chrysler v. Brown, 441 U.S. 281 (1979), i.e., a

regulation not "affecting individual rights and obligations" Morton v. Ruiz, 415 U.S. at

232; that the "court is not required to give effect to" Batterton v. Francis, 432 U.S. 416,

---

2008-124,  Hartman, *et al.*, v. Commissioner, in which the Honorable Renato Beghe
found that:

"The misconduct that was a fraud on the Court began long before the trial of the
test cases that resulted in Dixon II. The Kersting project test case proceedings
began June 10, 1985", Hartman, p. 127.

425 n. 9; and that "26 CFR 301.7433-1" lacks substantive authority.

The Court should deny the Motion to Dismiss.

Respectfully Submitted

Dated _JULY 1ST_____, 2008

_____
Scott A. Whittington

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the forgoing on:

YONATAN GELBLUM
U.S. Dept of Justice
P.O. Box 227
Washington D.C. 20044

Dated _JULY 1ST_____, 2008

_____
Scott A. Whittington